Voto particular disidente emitido por la
Juez Asociada Señora Rodríguez Rodríguez.
Cuando lo que importa es el poder por el poder mismo, eventualmente se tendrá que recurrir a la coacción para conservarlo. Y la coacción cruda a la larga genera mayor erosión de la legitimidad. Ello conduce inevitablemente a una gran sole-dad. La soledad del poder a secas.(1)
La controversia planteada en este recurso de certificación se limita a definir si, de acuerdo con lo dispuesto en la Ley Núm. 18 de 15 de mayo de 2013, que enmendó la Ley de la Judicatura de 2003, este Tribunal posee competencia para atender el recurso de certificación presentado. La respuesta es sencilla: NO. Sin embargo, la mayoría, ignorando la letra precisa de la ley y la reconocida delegación constitucional a la Asamblea Legislativa para determinar la competencia de este Tribunal, tuerce el texto de la ley que interpreta, desnaturaliza nuestros previos precedentes y ofusca y corrompe el contenido de nuestra Constitución para crear un espejismo de juridicidad sobre el cual asentar su Resolución.
*689 El dictamen formulado, la inconstitucionalidad de la Ley Núm. 18, se hace emitiendo una resolución y no una opinión. La primera vez que ello ocurre en nuestra historia constitucional, pues como sabemos una resolución emitida en un caso contencioso no genera precedente y sólo le aplica a las partes que se encuentran ante el Tribunal.(2) Lo intempestivo del dictamen queda por demás manifiesto en el hecho de que en la Resolución en cuestión no se expidió el auto solicitado. Cabe preguntarse entonces: ¿Puede existir una controversia justiciable ante nuestra consideración cuando no hemos expedido el auto solicitado? ¿Podemos declarar inconstitucional una ley cuando no expedimos el auto discrecional? ¿Estamos ante una opinión consultiva? ¿Es la Resolución una declaración de inconstitucionalidad inoficiosa? ¿A quién le aplica? ¿Es este dicta-men un precedente?
Con esta precipitada acción, la mayoría se arroga facultades constitucionales que no le corresponden y que pertenecen a la esfera de la Asamblea Legislativa. De esta manera se provoca un enfrentamiento constitucional no tan sólo a destiempo, sino innecesario y nocivo para el País.
Por otro lado, nos preocupa y consterna la intervención de varios miembros de este Tribunal en la determinación que se anuncia, habida cuenta de que éstos expresaron pú *690 blicamente su antipatía y oposición a la Ley Núm. 18, y expresaron mediante carta (que se hizo pública) ante el Gobernador del Estado Libre Asociado de Puerto Rico, Hon. Alejandro García Padilla, sus preocupaciones con la firma de la ley. Con esta actuación pública miembros de esta Curia adelantaron su criterio sobre un asunto que claramente llegaría a nuestra atención, minando de esta forma la imparcialidad de este Foro.
Todo ello no me deja otra alternativa que no sea disentir enérgicamente del errado y peligroso proceder de la mayoría de este Tribunal.
I
Por tratarse sobre la misma controversia, los tres casos de epígrafe fueron consolidados. A continuación presento un breve resumen de los hechos de cada uno de forma separada.(3)
A

CT-2013-5

El pasado 8 de mayo de 2013 un grupo de empleados de la Oficina del Contralor de Puerto Rico presentó ante el Tribunal de Primera Instancia una petición de sentencia declaratoria e interdicto preliminar y permanente para que se declarase inconstitucional ciertas disposiciones de la Ley Núm. 3 de 4 de abril de 2013.(4) El 9 de mayo de *691 2013 el Tribunal de Primera Instancia ordenó a la parte demandada a presentar su contestación a la demanda o presentar alguna petición dispositiva en o antes del 21 de mayo de 2013. De la misma manera, señaló vista para el 23 de mayo de 2013. Antes de que culminara la fecha límite otorgada a la parte demandada en este pleito para contestar la demanda o presentar alguna petición dispositiva, el 16 de mayo de 2013 la parte demandante presentó ante nosotros el recurso de certificación que hoy está ante nuestra consideración.
Una vez presentado el recurso de certificación, todos los demandados comparecieron sin someterse a la jurisdicción del Tribunal mediante mociones separadas solicitando la desestimación del recurso de certificación. Arguyen los demandados que el Tribunal carece de jurisdicción para atender la petición de certificación ya que éste no cumple con los requisitos aplicables a un auto de certificación intrajurisdiccional cuando el asunto está ante la consideración del Tribunal de Primera Instancia. La parte peticionaria presentó su oposición a las mociones de desestimación y en esencia argumentó que debido al trámite legislativo de la Ley Núm. 18 de 15 de mayo de 2013, existen dudas sobre su fecha de efectividad con respecto al recurso presentado por éstos.
Por lo tanto, solicitaron al Tribunal que disponga de la controversia según la Regla 50 del Reglamento del Tribunal de Supremo, 4 LPRA Ap. XXI-B, y prescindamos de todo procedimiento específico en el mejor interés de todas las partes. La parte demandada presentó su Réplica a la oposición a la moción de desestimación argumentando que la Constitución del Estado Libre Asociado de Puerto Rico establece tanto los requisitos y las formalidades necesarias para que un proyecto pueda convertirse en ley y la vigencia de las mismas. Concluyen que dado el hecho de que el Gobernador del Estado Libre Asociado de Puerto Rico, Hon. Alejandro García Padilla, firmó el P. del S. 367 luego de su aprobación por ambas cámaras legislativas el pasado 15 de mayo de 2013, no existe duda de la aplicabilidad y vigencia *692 de la Ley Núm. 18 de 15 de mayo de 2013. Posteriormente la parte peticionaria presentó una dúplica a la réplica de la parte demandada, fundamentalmente al amparo de los mismos argumentos que en su oposición a la desestimación.
B

CT-2013-6

El pasado 20 de mayo de 2013 se presentó una solicitud de sentencia declaratoria, e interdicto provisional y permanente impugnando la validez constitucional de la Ley Núm. 3 de 4 de abril de 2013 por parte de un grupo de empleados de la Oficina de Administración de Tribunales (OAT), de la Corporación del Fondo del Seguro del Estado, del Departamento de Justicia, del Departamento de Hacienda, del Departamento de Familia, del Departamento del Trabajo, de la Administración para el Sustento de Menores, del Departamento de Estado, de la Comisión Estatal de Elecciones, de la Administración de Desperdicios Sólidos, entre otras. El Tribunal de Primera Instancia celebró una vista el 23 de mayo de 2013 para evaluar la procedencia de los remedios extraordinarios solicitados. A la misma vez, el caso fue consolidado en el foro de instancia con otros dos casos que tratan sobre el mismo asunto: María del Carmen Alvarado Pacheco v. E.L.A., (KPE2013-2799) y Víctor Trinidad Hernández v. E.L.A., (KPE2013-3050).
El pasado 31 de mayo de 2013 los peticionarios presentaron el recurso de certificación que hoy atendemos, solicitando nuestra intervención inmediata. El 3 de junio de 2013 las partes demandadas presentaron una Urgente Moción de Desestimación de la petición de certificación, alegando en esencia que no procede el perfeccionamiento del recurso según la Ley Núm. 18 de 15 de mayo de 2013.
*693 c

CT-2013-7

El 21 de mayo de 2013 el Sr. Víctor H. Trinidad Hernández, junto a otros, presentó una petición de sentencia declaratoria e interdicto preliminar y permanente, al igual que en los otros dos casos consolidados, impugnando la constitucionalidad de la Ley Núm. 3 de 4 de abril de 2013. El 5 de junio de 2013 los peticionarios presentaron la solicitud de certificación que hoy atendemos, y posteriormente solicitó el trámite acelerado a su petición de certificación.
Luego de consolidar los recursos, hoy, una mayoría de este Tribunal proclama la inconstitucionalidad de los Artículos 1 y 2 de la Ley Núm. 18 de 15 de mayo de 2013. Tanto la Resolución emitida por una mayoría de los miembros de este Tribunal como el Voto particular disidente emitido por el Juez Asociado Señor Estrella Martínez pretenden justificar su determinación aduciendo, tal cual jerigonza, que la Ley Núm. 18 tenía como propósito impedir que este Tribunal descargara su función constitucional como tribunal de última instancia.
Arguye la mayoría que la actuación legislativa de aprobar la Ley Núm. 18 infringe los principios de separación de poderes al afectar ilegalmente la jurisdicción de este Tribunal. Según la Resolución y el Voto particular disidente del Juez Asociado Señor Estrella Martínez, la Ley Núm. 18 permite que el Estado evada la revisión judicial, le otorga un poder de veto al Estado a cualquier solicitud de certificación intrajurisdiccional y limita la revisión de determinaciones interlocutorias por tribunales inferiores. Esto, según la mayoría, transgrede el esquema constitucional de la Rama Judicial convirtiendo a los tribunales de inferior jerarquía en tribunales de última instancia. Además, sostienen que la verdadera intención de la Asamblea Legislativa al aprobar la Ley Núm. 18 se dirigía a mania-tar a este Tribunal y limitar el acceso a la justicia.
*694 El proceder de los jueces de la mayoría altera nuestra jurisprudencia, ignora el texto de la ley, tergiversa la Constitución y tiñe de bruma la imparcialidad de este Foro.
II
Como se indicó, la controversia planteada ante este Foro se limita a determinar si luego de la aprobación de la Ley Núm. 18 de 15 de mayo de 2013, poseemos competencia para atender el recursos de certificación presentado por los demandantes. Sin embargo, ante la dúctil interpretación de una mayoría de este Tribunal del texto constitucional, conviene evaluar detenidamente lo que son galimatías sobre los alegados vicios constitucionales de la Ley Núm. 18 de 15 de mayo de 2013. Comencemos repasando cuál es la estructura del Poder Judicial según delineado en la Constitución.
A
Como sabemos, el Artículo V de la Constitución establece la estructura del Poder Judicial en Puerto Rico. La Sección 2 de dicho Artículo establece un “sistema judicial unificado en lo concerniente a la jurisdicción, funcionamiento y administración” de los tribunales. Const. PR, Art. V, Sec. 2, LPRA, Tomo 1, ed. 2008, pág. 412. La Constitución delega en la Asamblea Legislativa el poder “para crear y suprimir tribunales, con excepción del Tribunal Supremo”, junto al poder para determinar “su competencia y organización”. Id. En lo que respecta a la competencia original del Tribunal Supremo, la única competencia de rango constitucional es la establecida para atender los casos de hábeas corpus. Si el Tribunal Supremo ha de tener competencia original adicional, corresponderá a la Asamblea Legislativa concederla mediante legislación. Const. PR, Art. V, Sec. 5, LPRA, Tomo 1.
La facultad constitucional de la Asamblea Legislativa de determinar la competencia de los tribunales en nada es *695 incompatible con el principio, también establecido en la Constitución, de un sistema judicial unificado como tampoco afecta el poder delegado al Tribunal Supremo de ser el tribunal de última instancia. Sostener lo contrario supondría que existe una cláusula constitucional que es inconstitucional o, que hay unas cláusulas en la Constitución que son más constitucionales que otras. A todas luces, ello es una incoherencia.
Así la Asamblea Legislativa es la encargada por disposición constitucional de canalizar el ejercicio de la jurisdicción de cada tribunal, es decir, establecer su competencia. Claro está, reservándole al Tribunal Supremo la facultad de ser siempre el tribunal de última instancia. Debemos en este punto despejar la confusión creada por las expresiones de la Resolución emitida como la del Voto particular disidente, sobre los conceptos de jurisdicción y competencia.
El concepto de jurisdicción consiste en el “poder o autoridad que ostenta un tribunal para decidir casos o controversias”. Peerless Oil v. Hnos. Torres Pérez, 186 DPR 239, 249 (2012); Rodríguez v. Registrador, 75 DPR 712 (1953); Etimológicamente, el término jurisdicción “procede del latín juris-dico o juris decire que [...] significan ‘poder para decir o aclarar cuál es la ley’ ”. M.A. Velázquez Rivera, Jurisdicción y competencia de los tribunales de Puerto Rico, 48 Rev. Jur. UPR 27, 29 esc. 7 (1979).
Distinto es el concepto de competencia, que valga aclarar “no es sinónimo de jurisdicción”. R. Hernández Colón, Práctica jurídica de Puerto Rico: derecho procesal civil, 5ta ed., Ed. Lexis-Nexis de PR, 2010, pág. 47. El término competencia “no es otra cosa que la manera de ordenar; de canalizar adecuadamente el ejercicio de la autoridad o jurisdicción que la Constitución concedió al sistema unificado para adjudicar las controversias judiciales”. Velázquez Rivera, supra, pág. 48. Así, por ejemplo, “cuando dos salas de un tribunal tienen autoridad legal o jurisdicción para entender en un mismo asunto, precisa recurrir a criterios de competencia para canalizar el ejercicio de ese poder legal”. íd., pág. 29.
*696 Señala el Prof. Miguel A. Velázquez Rivera que la “ausencia de [...] criterios [de competencia] o normas para guiar el ordenado ejercicio de jurisdicción nos llevaría inexorablemente a la anarquía”. Velázquez Rivera, supra, pág. 29. Según el designio de nuestros constituyentes, corresponde al Poder Legislativo establecer los criterios de competencia para que haya un ordenado ejercicio de la jurisdicción. La jurisdicción, por lo tanto, se ejerce por medio de la distribución adecuada del trabajo judicial o competencia entre cada uno de los componentes del Tribunal General de Justicia. Hernández Colón, op. cit., pág. 47. Es decir, como bien expone el licenciado Hernández Colón, “[l]a concesión de jurisdicción que hace la Constitución [...] se funcionaliza [sic] mediante la competencia”. Id.
Al evaluar la interacción de ambos conceptos en nuestra Constitución, el profesor Velázquez Rivera señala que
[u]n análisis detenido del Artículo V [...] revela que, en lo concerniente a jurisdicción y competencia, el referido precepto establece cinco principios fundamentales; a saber: que la autoridad, el poder para resolver todas las controversias de naturaleza judicial que surjan en nuestro país, residirá en el Tribunal Supremo y en aquellos tribunales de justicia que se establezcan por ley; que dicha jurisdicción original para actuar en asuntos judiciales será una común a todos dichos tribunales, puesto que la Ley Fundamental los convierte en parte integrante de un solo sistema judicial unificado; que el Tribunal Supremo será uno de jurisdicción general sobre todo pleito en su etapa apelativa; que, en lo que a jurisdicción original, o de primera instancia se refiere, el Tribunal Supremo tendrá jurisdicción general sobre todos los casos, incluyendo recursos de Hábeas Corpus y cualquier otro que la Asamblea Legislativa le encomiende por ley y, por último, que la Legislatura estará facultada para canalizar la jurisdicción que a todos los tribunales concede este artículo determinando por ley su respectiva competencia y organización. Velázquez Rivera, supra, págs. 30-31.
En consecuencia, podemos colegir que si bien es cierto que por mandato constitucional de un sistema judicial unificado todos los tribunales tienen jurisdicción original para actuar sobre asuntos judiciales, es la Asamblea Legislativa la encargada de canalizar el ejercicio de esa autoridad o *697 jurisdicción entre los tribunales. Éste fue el entendido de nuestros constituyentes. A esos efectos, el delegado Señor Gutiérrez Franqui expresó elocuentemente lo siguiente:
Separación de poderes es que cada rama del gobierno se ajuste a bregar con aquellos aspectos de la organización política que son de su incumbencia. Y la especificación de la jurisdicción de los tribunales ha sido generalmente reconocida como de la incumbencia de la Asamblea Legislativa y no del poder judicial.
A pesar de eso lo cierto es que la proposición traída por la Comisión de la Rama Judicial establece ciertas limitaciones que no existen ahora en la Carta Orgánica para garantizar la jurisdicción apelativa y de última instancia del Tribunal Supremo. Aquí se dispone, claramente y en palabras que no dejan lugar a dudas, que el Tribunal Supremo de Puerto Rico será el tribunal de última instancia. Se dispone asimismo que en materia de jurisdicción el Tribunal Supremo y los demás tribunales de Puerto Rico constituirán un sistema integrado y que solamente podrá intervenir la Asamblea Legislativa en cuestiones de competencia.
Eso quiere decir que está fuera del alcance de la Asamblea Legislativa de Puerto Rico la jurisdicción del Tribunal Supremo. Lo que está a su alcance es la competencia. (Énfasis suplido). 1 Diario de Sesiones de la Convención Constituyente 591-592 (1961).
Asimismo, ante la presentación de enmiendas a la Sección 5 del Artículo V, el delegado Gutiérrez Franqui aclaró lo siguiente:
[L]os detalles [sobre la competencia] son pura y claramente de carácter legislativo y que si nosotros aceptásemos esa proposición, esa enmienda, lejos de estar garantizando legítimamente una independencia judicial lo que estaríamos haciendo es, en forma ilegítima, arrancando poderes que son inherentes de la rama legislativa [...] (Énfasis nuestro). Diario de Sesiones, supra, pág. 592.
Finalmente, éste concluye que la disposición constitucional “garantiza constitucionalmente aquellos aspectos jurisdiccionales que deben ser garantizados constitucionalmente como su jurisdicción general, su condición de tribunal apelativo de última instancia, y los derechos a ex- *698 pedir originalmente autos de mandamus y de habeas corpus”. Diario de Sesiones, supra.(5)
A raíz del mandato constitucional establecido de la Sección 2 del Artículo V, la Asamblea Legislativa, mediante la Ley Núm. 11 de 24 de julio de 1952, según enmendada, conocida como Ley de la Judicatura del Estado Libre Asociado de Puerto Rico, estableció “los criterios de competencia [...] para canalizar adecuadamente el ejercicio de jurisdicción que la Constitución depositó en el sistema judicial”. Desde entonces, en múltiples ocasiones la Asamblea Legislativa ha ejercido su poder de determinar la competencia y organización de los tribunales sin que este Foro mostrara objeción al poder delegado a la Asamblea Legislativa en controversias ante su consideración. Véase Comentarios con respecto al P. de la S. 367 de la Oficina de la Administración de los Tribunales, Comisión de lo Jurídico, Seguridad y Veteranos, Senado de Puerto Rico, 10 de abril de 2013.(6)
Por ejemplo, poco tiempo después de aprobada la Constitución de Puerto Rico, en Rodríguez v. Registrador, supra, pág. 721, este Tribunal reconoció que la Asamblea Legislativa se reserva “la facultad de disponer por ley sobre la competencia de los tribunales incluyendo el lugar donde deben ventilarse los litigios”. Asimismo, en Petrovich v. Srio. de Hacienda, 79 DPR 250, 260 (1956), señalamos que
[e]l Artículo V de la Constitución del Estado Libre Asociado de Puerto Rico claramente reserva a la Asamblea Legislativa la facultad de determinar la autoridad o competencia de los tribunales, con la salvedad de que el Tribunal Supremo es “el tribunal de última instancia en Puerto Rico” y además tiene *699 autoridad para “conocer en primera instancia de recursos de hábeas corpus y de aquellos otros recursos y causas que se determinen por le/’.
Contrario al claro precedente jurisprudencial y la merecida deferencia al Poder Legislativo de establecer la competencia de los tribunales, la mayoría de este Tribunal sostiene que en esta ocasión la eliminación del recurso de certificación en casos pendientes ante el foro primario es inconstitucional. Sin embargo, en lo que atañe al recurso de certificación intrajurisdiccional, han existido diversos periodos de tiempo en los que ni este Tribunal ni las partes tenían a su haber la disponibilidad de este recurso en casos pendientes ante el Tribunal de Primera Instancia. Véase Informe de OAT. De hecho, en ocasión anterior, el Juez Asociado Señor Fuster Berlingieri, reconociendo la facultad de la Asamblea Legislativa de establecer la competencia de este Tribunal con respecto al recurso de certificación, señaló que la “[Ley de la Judicatura de Puerto Rico de 1994, según enmendada en 1995] nos privó de la autoridad para considerar con la premura que el asunto requiere recursos como el de autos, por lo que estamos impedidos de intervenir en este momento en este caso”. (Enfasis suplido). P.R.T. Co. v. H.I.E.Tel., 145 DPR 833, 836 (1998) (Fuster Berlingieri, J.; voto explicativo). Al así hacerlo, señaló además que este Foro “[n]o ten[ía] otra opción que cumplir con las leyes del país, por lo que no podemos atender ahora este asunto. Muy mal ejemplo daríamos si obviáramos las restricciones legales que impiden nuestra intervención en este caso en este momento”. Id. Esto demuestra que la actuación de una mayoría del Tribunal en declarar inconstitucional los Artículos 1 y 2 de la Ley Núm. 18 no es más que una expansión inapropiada de los poderes de la Rama Judicial.
Irónicamente, el límite a la competencia del Tribunal Supremo que hoy se declara inconstitucional fue precisamente el mismo límite que nuestros constituyentes establecieron en la Constitución. Parece ser, sin embargo, que la mayoría de este Tribunal, en su interés desmedido de *700 ejercer el poder, no hayan encontrado un detente en los límites constitucionales del Poder Judicial. No es de extrañar que las contenciones mayoritarias sobre los alegados vicios constitucionales de la Ley Núm. 18 carezcan de fundamentos constitucionales y se circunscriban a la crítica sobre la sapiencia de la Asamblea Legislativa en determinar, precisamente, el cauce del ejercicio de jurisdicción de los tribunales.
Conforme con la discusión anterior, no queda la menor duda de que la Asamblea Legislativa es la rama de gobierno constitucionalmente facultada para canalizar la competencia y organización de los tribunales. Repasemos entonces las disposiciones estatutarias que hoy una mayoría de este Tribunal convenientemente declara inconstitucional.
El Artículo 1 de Ley Núm. 18 enmienda el Artículo 3.002 de la Ley de la Judicatura el cual establece la competencia del Tribunal Supremo. En esencia, las enmiendas al Artículo 3.002 (4 LPRA sec. 24s) limitan la competencia original del Tribunal Supremo al límite establecido en nuestra Constitución, a saber, la competencia original para atender el recurso de habeas corpus. El Artículo 2, por su parte, enmienda las disposiciones de las Regla 52.2(d) de Procedimiento Civil, 32 LPRA Ap. V, sobre el recurso de certificación ante el Tribunal Supremo para adecuarlas a las enmiendas a la Ley de la Judicatura. Ahora, con la nueva enmienda, la competencia del Tribunal Supremo para atender una certificación proveniente del Tribunal de Primera Instancia se circunscribe a aquellas instancias en que ambas partes, demandante y demandado, así lo soliciten. Por el contrario, una vez un caso esté ante el Tribunal de Apelaciones, cualquier parte está facultada para acudir en certificación ante este Foro. En ambos escenarios es este Tribunal quien tiene la última palabra sobre el recurso instado.
La mayoría del Tribunal y el Voto particular disidente consideran que este esquema es inconstitucional porque le permite a una de las partes, al negar su anuencia a la *701 presentación de un recurso de certificación intrajurisdiccional, determinar la jurisdicción del Tribunal Supremo, lo que a su vez interfiere con la facultad de este Tribunal ejercer su rol como tribunal de última instancia. Francamente, esta explicación se revela, más que nada, como un artilugio diseñado para alcanzar un objetivo predeterminado y no como un razonamiento con base jurídica.
Para llegar a esta conclusión, la mayoría obvia la facultad constitucional de la Asamblea Legislativa de canalizar adecuadamente el ejercicio de la jurisdicción de los tribunales, determinando cuál es la competencia de cada foro, incluyendo el Tribunal Supremo, según lo hemos reconocido en múltiples ocasiones. Igualmente ofuscan la distinción entre el concepto de competencia y jurisdicción haciendo parecer que son una misma cosa. De ahí que se alegue que estas medidas limitan
[...] la jurisdicción de este Foro para emitir autos de certiorari con relación a decisiones interlocutorias del Tribunal de Apelaciones [;] limita [n] la intervención de este Tribunal a decisiones interlocutorias del foro apelativo intermedio que denieguen mociones de carácter dispositivo, que traten sobre la admisibilidad de testigos de hechos o peritos esenciales, que involucren asuntos de privilegio evidenciarios, descalificaciones de abogados, anotaciones de rebeldía o en casos de relaciones de familia. Resolución, págs. 612-613.
Como se puede apreciar, todas estas alegadas intervenciones “sobre la jurisdicción” de este Tribunal a lo que se refieren es a la competencia de este Tribunal. Por más que se invoque la palabra jurisdicción sabemos que se trata de competencia, de la misma forma que sabíamos que el emperador no llevaba el precioso traje invisible que le había confeccionado su sastre, sino que iba desnudo.
Lo cierto es que aun cuando los Artículos 1 y 2 de la Ley Núm. 18 inciden sobre la competencia de este Tribunal, en nada afectan la jurisdicción de este Foro para que eventualmente descarguemos nuestra función de tribunal de última instancia. Cualquier determinación interlocutoria podrá ser revisada tan pronto los tribunales inferiores ha *702 yan culminado el trámite ordinario y hayan emitido una determinación final.
Por otro lado, la mayoría busca apoyo para su determinación invocando el principio de acceso a la justicia, al considerar que la Ley Núm. 18 incide sobre este valor. Dos comentarios sobre ésta aseveración: primero, lo dicho va dirigido a cuestionar la sabiduría de la ley y la política pública que encarna. Como sabemos, le corresponde a la Asamblea Legislativa establecer la política pública sobre los distintos temas que se ventilan en el País. Igualmente, no le corresponde a este Tribunal entrar en consideraciones sobre la sabiduría de una ley. Segundo, para justipreciar la sinceridad de este señalamiento, debemos plantearnos cuál ha sido la trayectoria judicial de la mayoría en estos últimos años. Un somero repaso de la actuación judicial demuestra que, si algo, este Tribunal se ha caracterizado por cerrar las puertas de este Foro a los litigantes y por limitar los derechos ciudadanos: AAR, Ex parte, 187 DPR 835 (2013) (deniegan la solicitud de adopción por parte de una de las mujeres de una pareja del mismo sexo y reconocen que la orientación sexual no es una categoría protegida por la Constitución); Mundo Ríos v. CEE et al., 187 DPR 200 (2012) (niegan el derecho al voto a ciudadanos que aparecen en la lista de electores excluidos sin un debido proceso de ley); Lozada Sánchez et al. v. JCA, 184 DPR 898 (2012) (niega acceso al Tribunal por parte de los vecinos colindantes a la construcción del Gasoducto por en-tender que carecían de legitimación activa); Pantoja Oquendo v. Mun. de San Juan, 182 DPR 101 (2011) (se le niega la protección al derecho de libertad de expresión a un grupo de mujeres que alegaban que una ordenanza municipal interfería indebidamente con su derecho); Pueblo v. Flores Flores, 181 DPR 225 (2011) (Sentencia) (deniega la protección al amparo de la Ley 54 a una mujer víctima de violencia doméstica por su pareja); Asoc. Fotoperiodistas v. Rivera Schatz, 180 DPR 920 (2011) (deniega el acceso al Tribunal al amparo de la doctrina de academicidad); U.P.R. v. Laborde Torres y otros I, 180 DPR 253 (2010) (limita el *703 derecho a la libertad de expresión de los estudiantes universitarios); In re Solicitud Aumentar Núm. Jueces TS, 180 DPR 54 (2010); Fund. Surfrider y otros v. A.R.Pe., 178 DPR 563 (2010) (deniega el acceso al Tribunal a los residentes colindantes de un proyecto de construcción por carecer de legitimación activa); Domínguez Castro et al. v. E.L.A. I, 178 DPR 1 (2010) (declara que los empleados públicos no poseen un derecho adquirido en sus puestos de carrera); JP, Plaza Santa Isabel v. Cordero Badillo, 177 DPR 177 (2009) (niega la participación de partes interventoras en el procedimiento administrativo y abandona la figura de participante activo); Suárez Cáceres v. Com. Estatal Elecciones, 176 DPR 31 (2009) (deniega el derecho a que el voto en blanco de un ciudadano sea contabilizado).
La mayoría además indica que la Ley Núm. 18 concede al Estado un poder de veto ante la solicitud de un auto de certificación intrajurisdiccional, al exigir la anuencia de ambas partes en el litigio cuando se presenta el recurso en un caso ante la consideración del Tribunal de Primera Instancia. Esto, según la mayoría, permite que el Estado determine la jurisdicción del Tribunal. Nuevamente, la lógica del argumento se me escapa.
En primer lugar, nuevamente observamos una confusión latente con los conceptos de jurisdicción y competencia por parte de la mayoría. El requisito de anuencia de ambas partes al presentar el recurso de certificación intrajurisdiccional no presenta vicios de tratamiento desigual ya que no considera quiénes son las partes del litigio. Para poder garantizar un procedimiento judicial equitativo a todas las partes en un litigio, éste debe ser de aplicación general. Tan es así, que en una de las limitadas excepciones en las que se toma en consideración que el Estado es parte en el litigio, la extensión en los términos para contestar alegaciones, le es aplicable a todas las partes en el pleito. Regla 10.1 de Procedimiento Civil, 32 LPRAAp. V. Fuera de estas excepciones, el Estado, cuando forma parte de un procedimiento judicial se le considera como un litigante cualquiera, y por lo tanto podrá beneficiarse como afectarse por *704 los requisitos y condiciones que establezcan las Reglas de Procedimiento Civil.
La determinación de la Asamblea Legislativa de requerir el consentimiento de ambas partes para presentar un recurso de certificación intrajurisdiccional de un caso proveniente del Tribunal de Primera Instancia, como se puede apreciar del texto de la ley, le aplica tanto al litigante privado como al Estado. El requisito establecido no supone un poder de veto unilateral al Estado en todos sus procedimientos, supone un requisito prudencial para todos los casos independientemente de quienes sean las partes.
La mayoría de este Tribunal llama anómalo el “que una de las partes, con tan solo negar su anuencia, tenga el poder de determinar si existe jurisdicción del Tribunal Supremo” en el auto de certificación intrajurisdiccional. Primero, llamamos la atención al uso del concepto jurisdicción cuando se trata de competencia. Segundo, esta súbita preocupación de la mayoría de este Tribunal apunta a un desconocimiento sobre los requisitos y normas de procedimientos de nuestro ordenamiento. El requisito de consentimiento de ambas partes ha sido reconocido tanto por la Asamblea Legislativa como por este Tribunal, particularmente en cuestiones de competencia. Véase R. 3.2 de Procedimiento Civil, 32 LPRA Ap. V. A modo de ejemplo, en Lemar S.E. v. Vargas Rosado, 130 DPR 203, 207 (1992), específicamente señalamos que “[l]a competencia, por su naturaleza, puede obviarse si concurren el acuerdo de las partes y la anuencia del juez”. Este requisito, sin embargo, no ha levantado suspicacia alguna de los miembros de la mayoría. ¿Es inconstitucional permitir que el Estado consienta, al igual que cualquier otro litigante, la competencia de un Tribunal? Nuevamente, la mayoría recurre a argumentos en el vacío para llegar a su determinación preconcebida sobre la constitucionalidad de la Ley Núm. 18.
En vista de que entendemos que la Asamblea Legislativa actuó conforme a los poderes delegados por nuestra Constitución, veamos si las actuaciones de la legislatura *705 iban dirigidas a afectar la controversia ante nuestra consideración, otro de los argumentos de la mayoría.
B
La Resolución del Tribunal concluye que la Ley Núm. 18 tiene la intención de atacar determinaciones de este Tribunal y dilatar el caso de empleados gubernamentales que impugnen la constitucionalidad de la Ley Núm. 3 con respecto al sistema de retiro del Estado Libre Asociado de Puerto Rico. En otras palabras, la mayoría busca encajar la controversia ante nosotros a los hechos ocurridos en Colón Cortés v. Pesquera, 150 DPR 724 (2000). Sin embargo, el análisis llevado a cabo por éstos para llegar a esa conclusión tergiversa la jurisprudencia de este Tribunal en cuanto a la invasión ilegal del campo judicial por el poder legislativo. Ciertamente, “la autoridad para interpretar la Constitución y las leyes del país reside exclusivamente en la Rama Judicial”, Santa Aponte v. Ferré Aguayo, 105 DPR 670, 671 (1977), y esto incluye la determinación de qué facultad le corresponde a una u otra Rama. Id.
En Colón Cortés, resolvimos que la actuación legislativa que infringe el principio de separación de poderes es aquella en la que la legislación promulgada tiene “la intención clara y específica [de] afectar el resultado de un pleito particular”. (Enfasis en el original suprimido y énfasis suplido). Colón Cortés v. Pesquera, supra, pág. 764. A tales fines, en Colón Cortés nuestros señalamientos iban dirigidos a la actuación de la Asamblea Legislativa de “revoca[r] acciones tomadas por este Foro”. (Enfasis suplido). Id. Esa fue la intención de la Asamblea Legislativa al aprobar dos leyes: La Ley Núm. 323 de 6 de noviembre de 1999 y la Ley Núm. 324 de 6 de noviembre de 1999, apenas un mes luego de que este Tribunal emitiera una resolución en un caso pendiente.(7)
*706 No hay más que estudiar la discusión en el pleno de la Cámara de Representantes para captar la intención específica de los legisladores de cercenar el poder de revisión judicial de este Foro revocando en los méritos el dictamen emitido por este Tribunal.(8)
*707 En ese caso, para determinar la intención de la Asamblea Legislativa evaluamos tanto los informes rendidos en las comisiones legislativas, como la discusión en el pleno de ambas cámaras, sin pecar de ingenuidad.(9) Colón Cortés, supra. Pasemos a considerar en este momento el trámite de aprobación de la Ley Núm. 18 para ver si, en efecto, se asemeja a lo que ocurrió en id.
El P. del S. 367 de la autoría del Presidente del Senado fue presentado el pasado 8 de febrero de 2013. Huelga señalar, que en ese momento no existía legislación sobre el sistema de retiro de los empleados del Estado Libre Asociado y mucho menos el caso que hoy se encuentra ante nuestra consideración. Así las cosas, al día siguiente de la presentación de la medida se llevó a cabo su primera lectura en el pleno del Senado, y como ocurre con la mayoría de los proyectos, estuvo sin progreso legislativo por un periodo corto de tiempo. Eventualmente fue evaluado por la Comisión de lo Jurídico, Seguridad y Veteranos del Senado, el cual recomendó su aprobación con ciertas enmiendas. El 13 de mayo de 2013 el pleno del Senado aprobó la medida cuyo texto fue enviado a la Cámara de Representantes. Visto que ya una de las cámaras legislati *708 vas había aprobado el proyecto, esta Cámara inició prontamente su proceso de evaluación de la medida.
El 14 mayo de 2013 la Comisión de lo Jurídico de la Cámara de Representantes presentó su informe positivo, y la medida fue aprobada por el pleno de la Cámara ese mismo día. Al otro día, el 15 de mayo de 2013, el Hon. Alejandro García Padilla, al estamparle su firma, completó el trámite constitucional necesario para que el proyecto se convirtiese en la Ley Núm. 18 de 15 de mayo de 2013. La mayoría en este caso asume que este procedimiento se llevó a cabo debido a una demanda presentada ante el Tribunal de Primera Instancia que cuestiona la constitucionalidad de la Ley Núm. 3 de 4 de abril de 2013. Se nos hace difícil validar el salto conceptual de la mayoría para llegar a esta conclusión.
En primer lugar, y como apuntamos, el P. del S. 367 se presentó como proyecto de ley el 8 de febrero de 2013, mientras que el proyecto legislativo que eventualmente se convirtió en la Ley Núm. 3 de 4 de abril de 2013 (Ley de Retiro), ley que impugnan los peticionarios en este recurso de certificación, fue presentado por el Presidente de la Cámara de Representantes, Hon. Jaime Perelló, el 1 de marzo de 2013. Debido a la marcada diferencia de fechas, me parece improbable que el autor de la medida P. del S. 367, por un lado, vislumbrara las especificidades de la ley en controversia y, por el otro, anticipara específicamente el pleito ante nuestra consideración. La conclusión razonable y sin ánimo prevenido es que el P. del S. 367 fue diseñado para que aplicara a todos los trámites judiciales y no con este pleito en particular en mente. Tal intención va claramente dirigida a ejercer su facultad constitucional de regular la competencia de este Tribunal según la política pública que estime conveniente la Asamblea Legislativa.
Lo cierto es que para que las elucubraciones de la mayoría tuviesen algún viso de coherencia interna habría que suponer que, al presentarse el P. del S. 367, se sabía que se iba a aprobar una ley regulando el sistema del retiro de los empleados del gobierno, que esa ley sería del desagrado de *709 los empleados públicos por lo que la impugnarían, que se sabía que ese caso llegaría al Tribunal Supremo y que se sabía que este Foro resolvería en contra del gobierno declarando la ley, cuyo contenido no se conocía, inconstitucional.
En segundo lugar, la Ley Núm. 18 de 15 de mayo de 2013, al enmendar varias disposiciones de aspecto procesal de la Ley de la Judicatura de 2003, de las Reglas de Procedimiento Civil y de la Ley de Permisos, no afecta ningún caso en particular y mucho menos hace alguna determinación de hecho o de derecho de casos pendientes. Recordemos que la actuación legislativa que interfiere de manera impermisible con el Poder Judicial es aquella que deja sin efecto, modifica o menoscaba una sentencia por un tribunal con jurisdicción, P.R. Tobacco Corp. v. Buscaglia, Tes., 62 DPR 811 (1944); que permita que una sentencia quede sujeta a la acción posterior por la Asamblea Legislativa o que elimine la posibilidad de este Tribunal de revisar una sentencia, tal y como le corresponde a la Rama Judicial. Misión Ind. P.R. v. J.P., 146 DPR 64 (1998).
De la misma manera, al evaluar la discusión llevada a cabo por el pleno del Senado el día de la aprobación del P. del S. 367, no hay indicios de que la intención legislativa estuviera dirigida a afectar un caso en particular. La preocupación que refleja la discusión en el Senado de Puerto Rico no es en cuanto a que se impugne ley alguna, sino al hecho de que el Tribunal ha limitado el derecho a litigantes a tener su día en corte, certificando recursos sin que éstos hayan generado algún expediente con el cual se pueda hacer un juicio adecuado. Expuso el Senador Bhatia:
Este Tribunal Supremo, lamentablemente, lamentablemente ha tomado como norte el usurpar, el usurpar el derecho de las partes de tener un juicio. Simplemente toman el caso y deciden como ellos quieren, como simplemente un grupo de [...] si son los jueces del Supremo. Pero hay que tener una oportunidad para que se desfile la prueba. Hay que tener una oportunidad para ver la prueba. Hay que tener la oportunidad para juzgar los eventos y ver la veracidad de los eventos que ocurren. Si fuera una excepción lo que ha ocurrido en el Tribunal Supremo, yo entiendo, yo entiendo que a lo mejor debe *710 riamos repensar todo esto. Pero es que se ha convertido en la norma. Ahora la norma es que sin permitir que las partes puedan desfilar pruebas, simplemente con una llamada, con una expresión, con una solicitud se llevan los casos en medio. De hecho, señor Presidente, en medio de estar empezando a desfilar prueba, se llevan los casos. Y qué, qué coincidencia que se llevan los casos, se llevan los casos que afectan al Partido Nuevo Progresista [...]
Señor Presidente, como ha quedado enmendado este Proyecto, las partes pueden solicitar ir al Tribunal Supremo, por acuerdo de ambas partes si no hay un asunto que no haya [que] desfilar prueba pueden ir a una disputa sobre Derecho, pueden ir directamente al Supremo. El recurso de hábeas corpus pueden ir directamente al Supremo. Las partes todavía pueden lograr ese acceso. Pero de ahora en adelante, de ahora en adelante, se le quita la facultad ésta al Tribunal Supremo porque han abusado, han abusado, esta facultad que se les dio y han cogido de rehén a las partes en estos conflictos que hay en Puerto Rico. (Énfasis suplido). Diario de Sesiones, Senado de Puerto Rico, Vol. LXI, Núm. 31, págs. 3656-3657.(10)
Estas expresiones del Senador Bhatia no muestran la intención de afectar un caso en particular, y mucho menos demuestran que el P. del S. 367 busque revocar alguna sentencia o función revisora de este Tribunal. Las expresiones del Senador Bhatia van dirigidas a cuestionar el uso apropiado por el Tribunal Supremo de la competencia otorgada en leyes anteriores, según dispone la Constitución. Valga aclarar que el P. del S. 367 en nada menoscabó nuestra jurisdicción como tribunal revisor de última instancia en cualquier caso presentado ante el Tribunal General de Justicia.
La Ley Núm. 18 tampoco convierte a los tribunales de menor jerarquía en tribunales de última instancia. Como se sabe, este Tribunal se reserva el poder de revisión judicial sobre cualquier sentencia o determinación final. Más bien, como ya hemos reseñado, la Ley Núm. 18 es una actuación de la Asamblea Legislativa en el ejercicio de su *711 discreción constitucional en modificar tanto la competencia de los distintos tribunales inferiores como la competencia original del Tribunal Supremo, según estime conveniente, considerando las circunstancias y el interés público.
Muy distinta fue la situación presentada ante esta Curia en Colón Cortés v. Pesquera, supra, donde la Asamblea Legislativa actuó en respuesta a la determinación de este Tribunal con respecto a un caso en particular. La intención legislativa de las dos leyes en aquella ocasión buscaban decirle al Tribunal Supremo cómo resolver la controversia ante sí. Tampoco se asemeja la actuación de la Asamblea Legislativa al aprobar la Ley Núm. 18 a la medida declarada inconstitucional en Misión Ind. P.R. v. J.P., supra. En aquella ocasión la Asamblea Legislativa en efecto revocó mediante legislación una sentencia del antiguo Tribunal de Circuito de Apelaciones (TCA) que detenía la construcción del Superacueducto de la Costa Norte.(11)
Mediante la Ley Núm. 19 de 12 de junio de 1997, la legislatura autorizó a la Autoridad de Acueductos y Alcantarillados a continuar con la construcción, revocando así la determinación del TCA. En aquel entonces señalamos que “[d]e ser válida [...] la Ley Núm. 19[,] eliminaría las controversias adjudicadas en la sentencia cuya revisión se [nos] solicitaDba]”. Misión Ind. P.R. v. J.P., supra, pág. 84. Esto, entendimos, vulneró la doctrina de separación de poderes al usurpar el poder de revisión judicial.(12) No existe correlación entre las actuaciones que declaramos inconstitucional en Misión Industrial y Colón Cortés II, y la determinación de la Asamblea Legislativa de determinar nues *712 tra competencia según dispone nuestra Constitución. Nuestra función como Rama Judicial no es evaluar las bondades de las intenciones de actuaciones reservadas por la Constitución a otra rama de gobierno, sino proteger los mecanismos establecidos en nuestra Carta Magna que garantizan una efectiva separación de poderes.
Como vemos la mayoría en este caso al decretar la inconstitucionalidad de los Artículos 1 y 2 de la Ley Núm. 18, no puede articular un razonamiento coherente de por qué la ley es inconstitucional. El efecto real de lo que hace es arrogarse prerrogativas constitucionales de otra rama de gobierno en perjuicio del fino balance que se estableció en la Constitución. Balance de poderes, que, como nos recuerda el Juez Asociado Señor Negrón García,
[...] sigue siendo el mejor antídoto contra la tiranía de uno solo.
La más preciada fuente de autoridad está en la fuerza persuasiva inherente de nuestros fundamentos y nuestras decisiones. En la medida en que vía interpretación o reglamento recurramos al artificio, el sofisma, al fingimiento, destrozamos el fundamento del alto sitial de este Foro, trabajo de muchas generaciones que nos precedieron y del cual todos so-mos celosos custodios. Somos testigos de un esquema reglamentario simbiótico —Jueces [-Políticos]— que excede lo racionalmente tolerable. Y lo peor de todo, convirtiendo a la mayoría de este Tribunal en juez y parte de la in constitucionalidad de sus propios actos! (Citas omitidas y énfasis en el original). Berríos Martínez v. Gobernador II, 137 DPR 195, 265-266 (1994) (Negrón García, J., Op. disidente).
III
A
Visto que la Ley Núm. 18 no contraviene la doctrina de separación de poderes, y por ende es una actuación legislativa válida que regula la competencia de este Tribunal, procede que evaluemos, según adelanté, si luego de la aprobación de dicha ley poseemos competencia para aten *713 der los recursos presentados. Evaluado el texto de la ley contestamos en la negativa.
Nuestra Constitución “prescribe las formalidades más importantes que debe seguir todo proyecto para convertirse en ley”. Acevedo Vilá v. Aponte Hernández, 168 DPR 443, 462 (2006). En particular, la Constitución dispone que “[c]ualquier proyecto de ley que sea probado por una mayoría del número total de los miembros que componen cada cámara se someterá al Gobernador y se convertirá en ley si éste lo firma”. (Enfasis suplido). Art. Ill, Sec. 19, Const. PR, LPRA, Tomo 1, ed. 2008, pág. 399. Por otro lado, la Constitución también dispone que “[l]as leyes deberán ser promulgadas conforme al procedimiento que se prescriba por ley y contendrán sus propios términos de vigencia”. (Énfasis suplido). Art. VI, Sec. 5, Const. PR, LPRA, Tomo 1, ed. 2008, pág. 426.
Quiere decir que según la Constitución del Estado Libre Asociado de Puerto Rico, los requisitos formales para que un proyecto se convierta en ley son la aprobación por cada cámara y la firma del poder ejecutivo. No existe ningún requisito adicional. En cambio, la vigencia de la ley aprobada dependerá de la determinación por la Asamblea Legislativa en la propia ley.
Por otro lado, este Tribunal ha reiterado el principio general de interpretación de estatutos, según establece el Artículo 14 de nuestro Código Civil. Éste expresa que “[cjuando la ley es clara y libre de toda ambigüedad, la letra de ella no debe ser menospreciada bajo el pretexto de cumplir su espíritu”. Cod. Civ. PR, Art. 14, 31 LPRA see. 14. La razón de ser de esa regla de interpretación consiste en que “[cjuando el legislador se ha manifestado en lenguaje claro e inequívoco, el texto de la ley es la expresión por excelencia de la intención legislativa”. S.L.G. Rivera Carrasquillo v. A.A.A., 177 DPR 345, 362 (2009) (Martínez Torres, J., Op. mayoritaria). Ante la presencia de un estatuto que posee un texto claro e inequívoco, este Tribunal no “debe buscar más allá del texto de la ley para encontrar la verdadera voluntad del legislador, sino que se debe descu *714 brir y dar efecto a la intención expresada en la letra del estatuto”. Morales et als. v. Marengo et al., 181 DPR 852, 858-859 (2011) (Pabón Charneco, J., Op. mayoritaria).
Finalmente, la Regla 32 del Reglamento del Tribunal Supremo de Puerto Rico dispone en su inciso (b) que cualquier parte puede solicitar mediante moción la desestimación por cualquiera de los motivos siguientes: (1) que este Tribunal carezca de jurisdicción para considerarlo; (2) que no haya sido perfeccionado de acuerdo con la ley, (3) que no se haya proseguido con la diligencia debida o de buena fe; (4) que el recurso sea frívolo, o (5) que el recurso se haya convertido en académico. Regla 32(b), Reglamento del Tribunal Supremo de Puerto Rico, 4 LPRA Ap. XXI-B. Además, este Tribunal tiene la facultad para desestimar motu proprio cualquier recurso ante cualquiera de los motivos antes mencionados. Id., R. 32(d).
B
El P. del S. 367 fue presentado por el Sen. Eduardo Bhatia Gautier el pasado 8 de febrero de 2013. Tomando su curso ordinario por el trámite legislativo fue aprobado por el Senado y enviado a la Cámara de Representantes según establece nuestra Constitución. La segunda Cámara de la Asamblea Legislativa igualmente aprobó el proyecto. Luego de su aprobación por ambas cámaras, el único trámite que necesita el P. del S. 367 para convertirse en ley es la firma del Gobernador de Puerto Rico, acto ocurrido el pasado 15 de mayo de 2013. Véase Ley Núm. 18 de 15 de mayo de 2013.
Con respecto a su vigencia, la Asamblea Legislativa dispuso en el Artículo 15 de la Ley Núm. 18, que “[e]sta Ley comenzará a regir inmediatamente después de su aprobación y aplicará a todos los casos pendientes ante el Tribunal General de Justicia”. (Enfasis suplido). Art. 15, Ley Núm. 18 de 15 de mayo de 2013. Por lo tanto, no cabe duda de la intención legislativa de la vigencia de la Ley Núm. 18 a partir de la firma del Gobernador del Estado Libre Aso *715 ciado de Puerto Rico el 15 de mayo de 2013. Esclarecido el hecho de que el P. del S. 367 cumplió con el trámite constitucional para convertirse en ley, procede aplicar sus disposiciones a la controversia ante nosotros.
Luego de evaluar la Ley de la Judicatura de 2003, según enmendada por la Ley Núm. 18. de 15 de mayo de 2013, no podemos más que concluir que carecemos de la competencia para atender los recursos presentados. Estamos ante un estatuto cuya letra clara y sin ambigüedad establece de manera precisa los requisitos para que este Tribunal pueda atender un recurso de certificación intrajurisdiccional. El Artículo 3.002 de la Ley de la Judicatura de 2003, según emendado por la Ley Núm. 18 de 15 de mayo de 2013, dispone lo siguiente sobre la competencia del Tribunal Supremo respecto al recurso de certificación:
(e) Mediante auto de certificación, a ser expedido discrecionalmente, motu proprio, o a solicitud, de parte, podrá traer inmediatamente ante sí para considerar y resolver cualquier asunto pendiente ante el Tribunal de Apelaciones cuando se plantee la existencia de un conflicto entre decisiones previas del Tribunal de Apelaciones, se planteen cuestiones noveles de derecho, o se planteen cuestiones de alto interés público que incluyan cualquier cuestión constitucional sustancial al amparo de la Constitución del Estado Libre Asociado de Puerto Rico o de la Constitución de Estados Unidos.
(f) Mediante auto de certificación, a ser expedido discrecionalmente, cuando medie solicitud de ambas partes, podrá traer inmediatamente ante sí para considerar y resolver cualquier asunto pendiente ante el Tribunal de Primera Instancia cuando se plantee la existencia de un conflicto entre decisiones previas del Tribunal de Apelaciones, se planteen cuestiones noveles de derecho, o se planteen cuestiones de alto interés público que incluyan cualquier cuestión constitucional sustancial al amparo de la Constitución del Estado Libre Asociado de Puerto Rico o la Constitución de Estados Unidos. (Enfasis suplido). Artículo 1, Ley Núm. 18 de 15 de mayo de 2013.
En cuanto a la vigencia de las enmiendas a la Ley de la Judicatura, la Ley Núm. 18 de 15 de mayo de 2013 dispone en su Artículo 15 que: “[e]sta Ley comenzará a regir inmediatamente después de su aprobación y aplicará a todos los casos pendientes ante el Tribunal General de Justicia. Los *716 recursos apelativos presentados con anterioridad a la vigencia de la presente ley se regirán por el ordenamiento procesal anterior”. (Enfasis suplido).
La enmienda aprobada por la Asamblea Legislativa y firmada por el Gobernador de Puerto Rico el pasado 15 de mayo de 2013 consiste de un cambio en la competencia del Tribunal Supremo, facultad reconocida a la Asamblea Legislativa por la Sección 2 del Artículo V de nuestra Constitución. Con respecto al recurso de certificación intrajurisdiccional, la Ley de la Judicatura ahora reconoce dos situaciones que permiten al Tribunal atender, discrecionalmente, una controversia que no ha completado la vía ordinaria de revisión apelativa. La primera situación sólo está disponible para aquellas controversias que se encuentren pendientes ante el Tribunal de Apelaciones. Mientras que aquellas controversias que se encuentran aún ante el Tribunal de Primera Instancia, requieren de una solicitud conjunta de todas las partes en el pleito, además de plan-tear una cuestión novedosa de derecho, un conflicto entre decisiones del Tribunal de Apelaciones o que posea alto interés público.
El caso CT-2013-0005 comenzó el pasado 8 de mayo de 2013. De manera diligente el Tribunal de Primera Instancia ordenó a la parte demandada a que en un término preciso contestara la demanda o presentara alguna solicitud dispositiva. Conjuntamente dispuso para la celebración de una vista el jueves 23 de mayo de 2013, vista que en efecto se llevó a cabo. Mientras que los casos CT-2013-006 y CT-2013-007 comenzaron posteriormente.
En el caso CT-2013-005, el 16 de mayo de 2013, antes de que venciera el término dispuesto por el Tribunal de Primera Instancia para que la parte demandada contestara la demanda o presentara alguna solicitud dispositiva, la parte demandante y peticionaria presentó el recurso de certificación, solicitando que este Tribunal atendiera con premura la controversia en sus méritos. Ahora bien, según las disposiciones estatutarias aplicables a la solicitud presentada, este Tribunal claramente carece de competencia *717 para expedir el recurso. Véase Ley Núm. 18 de 15 de mayo de 2013.
En todos los casos ante nuestra consideración, la partes peticionarias presentaron un recurso de certificación de manera ex parte y claramente sin la anuencia de las partes demandadas. Además, los recursos de certificación se presentaron sin cumplir con el inciso (e) en la medida en que aún no hay un asunto pendiente ante el Tribunal de Apelaciones. Sin entrar en consideración de los demás requisitos del auto de certificación, los recursos ante nuestra consideración no cumplen con los incisos (e) y (f) de la Ley Núm. 18 de 15 de mayo de 2013, por lo tanto no queda más remedio que declararnos sin competencia.
IV
Concluyo llamando la atención a lo que me referí inicialmente y es aquella situación que, como poco, es incómoda y tiene el nocivo efecto de poner en tela de juicio la imparcialidad de este Foro y sus miembros. Me explico.
Mientras estaba pendiente de aprobación el Proyecto del Senado 367 en la Asamblea Legislativa, varios miembros de este Tribunal solicitaron y obtuvieron una reunión con el Presidente del Senado, reunión que se celebró en este Tribunal. De más está decir que algunos miembros de este Tribunal no sabíamos que esa reunión se había solicitado y que se habría de llevar a cabo en los predios de Tribunal, como tampoco conocíamos qué se discutiría.(13)
Semanas después, el proyecto fue aprobado por ambas cámaras legislativas y remitido al Gobernador para su *718 firma. En ese momento se le envió una carta al Gobernador objetando que se firmara la ley. Carta que se hizo pública coetáneamente a la prensa del país. Poco después, en una actividad pública de la Rama Judicial, varios jueces de este Foro condenaron enérgicamente la legislación aprobada por la Asamblea Legislativa.(14) Es evidente entonces que desde que se hizo pública la carta al señor Gobernador y luego en la actividad que reseñó la prensa, miembros de esta Curia adelantaron públicamente su parecer sobre la ley que hoy declaran inconstitucional. Las expresiones públicas de desagrado se hicieron con el conocimiento de que, más tarde que temprano, tendríamos que pasar juicio sobre las disposiciones de esa ley.
Nuestra sociedad, al igual que todas, es conflictiva pues así es la vida social. Y son esos conflictos que se generan en la convivencia los que como jueces estamos llamados a dirimir. Ello hay que hacerlo de forma tal que contribuyamos con nuestros dictámenes a la paz y al orden social y la estabilidad y defensa de nuestras instituciones. Para que podamos cumplir a cabalidad con este mandato, el deber de imparcialidad en nuestra gestión es central e imprescindible. “[L]a imparcialidad [es] el primer deber, el bien interno de la judicatura. Un juez que no es imparcial ha perdido el alma de su profesión”. J. De la Torre Díaz, Deontología de abogados, jueces y fiscales: reflexiones tras una década de docencia, Madrid, Ed. Universidad Pontificia Comillas, 2008, pág. 235. Es, el “principio supremo del proceso”.(15) Y es que, como acertadamente indica el magistrado Francisco Soto Nieto:
El Juez no puede, anticipadamente, situarse por entero en uno de los campos conflictuales, tiene que permanecer neutral a lo largo de ese iter dialogante y contradictorio que el proceso *719 va consumiendo [...] No se trata de conceder al hombre-juez un estatuto olímpico de persona por encima de las pugnas, un aventino amurallado. Se trata simplemente de reconocer un paso obligado en su tarea, el de la apertura de un paréntesis de sano escepticismo. Tiene que ser un hombre que escuche e intente comprender, sobre todo que escuche que deje explicarse, que no imponga. F. Soto Nieto, Compromiso de Justicia 368 (1977).
El juez imparcial no es sólo aquél que actúa con independencia frente a las partes sino también, frente al objeto del proceso. Expresarnos anticipadamente y de manera pública sobre lo que será objeto de un proceso judicial nos abre a cuestionamientos válidos sobre nuestra propia imparcialidad. ¿Cómo un litigante puede confiar que sus reclamos o posturas jurídicas serán escuchadas y sopesadas en sus méritos, de manera imparcial y sin ideas preconcebidas, si antes de que éste acuda a este Tribunal ya nos hemos expresado públicamente sobre esos reclamos o esas posturas? Es decir, que antes de dirimir el conflicto ya hemos tomado parte públicamente en la contienda.
Por otra parte, el juez imparcial tiene que ser “obediente al Derecho”. J. Aguiló Regla, Independencia e imparcialidad de los jueces y argumentación jurídica, Isonomía, No. 6, abril 1997, pág. 77. Los conflictos que llegan ante nuestra consideración no pueden ser resueltos mediante contorsiones jurídicas sino aplicando la norma que regula el caso. De ahí el aforismo/regla medieval, que encuentra su sustrato en el Derecho romano, iura novit curia (“el juez conoce el derecho”). Esta regla, que es garantía de la legalidad de la decisión, se configura también como deber ético del juez de, no tan sólo conocer el derecho, sino de “tomar decisiones cuyo contenido sea una aplicación correcta del Derecho que preexiste a la decisión”. J. Aguiló Regla, Aplicación del Derecho, independencia e imparcialidad, 17 (Núm. 2) NEJ-Eletrónica 161, 162 (2012) disponible en www.univali.br/periodicos.
Cuando con nuestras acciones creamos la impresión de carecer de independencia frente a las partes o al objeto del proceso creamos el caldo de cultivo que permite que cues *720 tionen nuestra imparcialidad. Igualmente ocurre cuando las justificaciones de un dictamen son construcciones jurídicas enrevesadas de dudosa validez jurídica. Al así actuar, impedimos que quienes acuden ante nosotros sean juzgados desde el Derecho y minamos, en ese proceso, la credibilidad que merecen nuestras decisiones y las razones jurídicas en la que se sustentan. De ahí que el profesor Aguiló Regla asevere que “[n]ada hay más distorsionador para el funcionamiento del Estado de Derecho que el hecho de que las decisiones judiciales se interpreten como motivadas por razones extrañas al Derecho y las argumentaciones que tratan de justificarlas como puras racionalizaciones”. Aguiló Regla, Independencia e imparcialidad de los jueces, supra, pág. 78.
El distinguido profesor y ex Juez Presidente del Tribunal Supremo de Israel reconoce que se deben dar tres precondiciones en toda democracia para que un juez pueda llevar a cabo su función adecuadamente. Estas son: (1) imparcialidad y objetividad judicial; (2) tomar decisiones enmarcadas en el consenso social, y (3) la confianza pública en la judicatura. A. Barak, The Judge in a Democracy, Nueva Jersey, Princeton University Press, 2006, pág. 101. La imparcialidad significa que “the judge treats the parties before him equally, providing them with an equal opportunity to make their respective cases, and is seen to treat the parties so”. (Enfasis suplido). íd.
Por otro lado, la confianza pública en el Tribunal es fundamental para que los jueces podamos cumplir con nuestro rol en la democracia. Esta confianza significa que el pueblo al que le servimos reconozca la existencia en nosotros de principios de independencia, rectitud, justicia e imparcialidad. Barak, op. cit., pág. 109. Significa que “judges are not interested parties to the legal struggle and that they are not fighting for their own power but to protect the constitution and democracy”, id.

El dictamen que hoy emite una mayoría de los miembros de este Tribunal es la antítesis de todo lo anterior.

*721 Es con gran consternación pero profunda responsabilidad institucional, que tomo distancia y cuestiono la participación de varios miembros de esta Curia en este proceso adjudicativo. Considero que su participación en la adjudicación de este caso lacera la imagen de imparcialidad de este Tribunal y sus jueces como celosos guardianes del Estado de Derecho cuyo resultado es atestarle un rudo golpe a la confianza de la ciudadanía en nuestros dictámenes y en esta Curia.(16) La grave herida que se le inflige hoy a esta Institución tardará décadas en sanar, pero sanará. Le corresponderá a los futuros miembros de esta Curia devolverle el prestigio perdido.
V
Por todos los fundamentos discutidos disiento del proceder de una mayoría de este Tribunal de declarar inconstitucional los Artículos 1 y 2 de la Ley Núm. 18 de 15 de mayo de 2013. Procede declarar “con lugar” las mociones de desestimación presentadas por la parte demandada y permitir que la controversia sea atendida en su curso ordinario ante el Tribunal de Primera Instancia.

 E. Rivera Ramos, Poder sin legitimidad, en E. Fontánez Torres e H. Meléndez Juarbe, eds., Derecho al derecho: intersticios y grietas del poder judicial en Puerto Rico, Cabo Rojo, Ed. Educación Emergente, 2012, págs. 68-69.

 Cuestionable por demás la determinación de una mayoría de este Tribunal de declarar inconstitucional una ley por medio de una resolución. Este Tribunal ha sostenido reiteradamente que sólo se establecen normas con cualidad de precedente mediante una opinión firmada o “per curiam”, Delgado, Ex parte, 165 DPR 170, 182 (2005); Mayol v. Torres, 164 DPR 517, 546 (2005); Díaz v. Colegio Nuestra Sra. del Pilar, 123 DPR 765, 777 (1989). En el caso de una sentencia, hemos sostenido que generalmente se utilizan para “resolver una controversia particular entre las partes litigantes, circunscrita, por lo tanto, a los hechos específicos de ese caso, o para disponer rápidamente del caso ante el gran número de casos que tiene que resolver”. (Enfasis suprimido). Delgado, Ex parte, supra, págs. 182-183. Estas sin embargo, algunos tratadistas consideran que pueden utilizarse como fuente persuasiva. R.E. Bernier y J.A. Cuevas Segarra, Aprobación e interpretación de las leyes en Puerto Rico, 2da ed., San Juan, Pubs. JTS, 1987, pág. 158. Las resoluciones, a pesar de ser decisiones de este Tribunal, tienen un uso limitado. Se limita éste a situaciones donde se declara “no ha lugar” a una solicitud de una parte, al establecimiento de las reglas de este Tribunal y al nombramiento de los miembros de las diferentes comisiones judiciales. Hoy, sin expedir el caso ante nosotros, la mayoría del Tribunal emite una opinión consultiva respecto a la constitucionalidad de una ley, actuación fuera de nuestro delimitado poder judicial. E.L.A. v. Aguayo, 80 DPR 552 (1958).

 Por entender, según las razones que expondré más adelante, que en este momento este Tribunal carece de competencia para atender los reclamos en los méritos de los tres recursos ante nuestra consideración, no discutimos las alegaciones presentadas por los peticionarios referentes a la Ley Núm. 3 de 4 de abril de 2013 (Ley de Retiro).

 La Ley Núm. 3 de 4 de abril de 2013 es una medida legislativa enfocada en atender la actual crisis actuarial y déficit fiscal del Sistema de Retiro de Empleados del Gobierno del Estado Libre Asociado. Según su extensa exposición de motivos, se estima que el déficit actuarial del Sistema de Retiro consiste de aproximadamente $25,491 millones. Exposición de Motivos, Ley Núm. 3 de 4 de abril de 2013.

 Posteriormente, mediante enmienda en la Asamblea Constituyente se eliminó el auto de mandamus como uno de los recursos que el Tribunal tendría jurisdicción original. 3 Diario de Sesiones de la Convención Constituyente 1650-1657 (1962).

 Por ejemplo, la Asamblea Legislativa ha variado la competencia de los tribunales en las legislaciones siguientes: Ley de la Judicatura de 1952, Ley Núm. 11 de 24 de julio de 1952, según enmendada; Ley de la Judicatura de Puerto Rico 1994, Ley Núm. 1 de 28 de julio de 1994, según enmendada; Ley de la Judicatura del Estado Libre Asociado de Puerto Rico de 2003, Ley Núm. 21 de 22 de agosto de 2003, según enmendada.

 Véase Colón Cortés v. Pesquera, 150 DPR 724, 747-748 (2000).

 Las expresiones del Representante Aníbal Vegas Borges son sólo un ejemplo:
“Es importante, señor Presidente, que tengamos que establecer claramente, y que no se puede perder de nuestro punto de vista, de que en todos estos procedimientos se requiere una DIA, que es una Declaración de Impacto Ambiental. Eso es importante. Aquí la Asamblea Legislativa no está diciendo que no se va a hacer una Declaración de Impacto Ambiental. Dentro de las facultades constitucionales que tiene la Asamblea Legislativa está el velar por el ambiente de Puerto Rico y la salud. Y nosotros, mediante un procedimiento que se establece, velamos por ese derecho constitucional de cada uno de los ciudadanos.
“El municipio, luego de haberse decretado la Declaración de Impacto Ambiental, el Municipio de San Juan acude ante el Tribunal Apelativo y le solicita al Tribunal Apelativo que paralice la obra del Trío. El Apelativo no procede a paralizar esa obra, el Municipio de San Juan acude ante el Tribunal Supremo, y el Tribunal Supremo determina que el Apelativo tiene que resolver.
“Fíjese, señor Presidente, que el Apelativo resuelve esta controversia. El Apelativo pasa juicio sobre la Declaración de Impacto Ambiental y dice que la Declaración de Impacto Ambiental cumple con todos los requisitos en el desarrollo del complejo que se va a llevar en el complejo de La Concha, mejor conocido como El Condado Beach Resort.
“Se acude al Tribunal Supremo sobre esa determinación, y el Tribunal Supremo en esa determinación interpreta que los procedimientos, específicamente que tienen que ver con la DIA, es un procedimiento cuasi sui generis, como si fuera un procedimiento cuasi judicial. Y eso es lo que nosotros queremos dejar claro en la tarde de hoy, el determinar que eso no es un procedimiento cuasi judicial, eso es un procedimiento que se hace [...] el mero hecho de que se apruebe una Declaración de Impacto Ambiental de por sí no obliga a las agencias a otorgar ese permiso. Puede que exista una Declaración de Impacto Ambiental favorable, y la agencia del Gobierno rechace el permiso que ante su consideración tiene.
“¿Qué hace el Tribunal Supremo? El Tribunal Supremo interpreta la Ley de Procedimiento Administrativo Uniforme y también interpreta la Ley que aprobamos aquí el año pasado, en la Cámara de Representantes, que tiene que ver específicamente con la Ley Número 295, donde establecimos un procedimiento informal para la Declaración de Impacto Ambiental.
“El Tribunal Supremo dice, mire, ‘La Junta de Calidad Ambiental tiene que hacer una determinación de hecho y conclusiones de derecho, para revisar entonces nosotros en el foro del Tribunal Supremo.’ Sin embargo, es importante traer a colación en la tarde de hoy, señor Presidente, que por primera vez, y en la disidencia, en esta disidente que está escrita por Negrón, también por el Juez Rebollo y el Juez Baltazar [sic], aunque Baltazar [sic] no emitió una opinión, sí su decisión era que favorecía o estaba en una opinión disidente. Mire una cosa sencilla, señor Presidente, dice la opinión disidente, que por primera vez este Tribunal Supremo está exigiendo para una lectura Declaración de Impacto Ambiental, que se haga una determinación de hechos y conclusiones de derecho. Que en el caso de Misión Industrial, que tuvieron ante su consideración, allí cuando paralizaron el Superacueducto no necesitaron que la Junta de Calidad Ambiental, en su Declaración de Impacto Ambiental hiciera una declaración de determinación de hechos y conclusiones de derecho. Fueron al expediente.
*707 “Ahora, señor Presidente, nosotros estamos claros en que queremos que si ha habido un error juicioso por parte del Tribunal Supremo en interpretar cuál es el debido procedimiento de ley y cuál es la ley, lo estamos dejando claro en la tarde de hoy con el Proyecto de la Cámara 2904.
“Muchas gracias, señor Presidente”. (Énfasis suplido). Decimotercera Asamblea Legislativa, Diario de Sesiones de la Cámara de Representantes, 3 de noviembre de 1999, Discusión de los P. de la C. 2904 y 2905, págs. 40-67.

 Al describir los sucesos que desembocaron en la controversia en Colón Cortés II, el Prof. Luis M. Villaronga advierte que:
“Debe recordarse que quienes acudieron al Tribunal Supremo en Colón Cortés I fueron la [Autoridad de Carreteras y Transportación] y la [Junta de Calidad Ambiental] y que una vez que obtuvieron un resultado desfavorable que las obligaba a corregir numerosas deficiencias del procedimiento de la [Declaración de Impacto Ambiental], optaron por no cumplir con los señalamientos del Tribunal. Antes bien, se pusieron de acuerdo para manipular el proceso administrativo para obtener un resultado distinto. Más aun, confrontadas con el caso de mandamus pendiente en el Tribunal en Colón Cortés II y la orden de paralización del proyecto, logran una legislación de encargo dirigida a impedirle al Tribunal seguir adelante con el caso para hacer valer lo que ya había resuelto en Colón Cortés I". L.M. Villaronga, Derecho constitucional, 70 Rev. Jur. UPR 353, 374-375 (2001).

 Si estas expresiones para la mayoría del Tribunal constituyen res ipsa loquitur, ¿qué podremos pensar de las expresiones del Portavoz de la minoría, Senador Seilhamer Rodríguez, con respecto a un alegado acuerdo con miembros de esta Curia y anticipando que el P. del S. 267 sería declarado inconstitucional?

 Para una discusión detallada sobre Misión Ind. P.R. v. J.P., 146 DPR 64 (1998), véase J.J. Álvarez González, Derecho constitucional de Puerto Rico y relaciones constitucionales con los Estados Unidos: casos y materiales, Bogotá, Ed. Temis, 2009, págs. 47-67.

 En aquel entonces la preocupación de este Foro se circunscribía a evitar que luego de que un Tribunal emitiera una determinación, la Asamblea Legislativa intentará aprobar una ley para cambiar el dictamen emitido respecto a las partes, arrogándose así facultades judiciales. De este modo, se entendió que si se acataba la Ley 19, “las ramas políticas del gobierno podrían intervenir para asegurar el resultado de cualquier litigio, convirtiendo así a la rama judicial en un instrumento de su voluntad”. D.M. Helfeld, Derecho constitucional, 68 Rev. Jur. UPR 345, 375 (1999).

 Curiosamente, tal parece que miembros de la minoría del Partido Nuevo Progresista en el Senado de Puerto Rico conocían de esa reunión. Eso explica las expresiones siguientes del Portavoz de la minoría, Hon. Larry Seilhamer Rodríguez, durante la discusión del P. del S. 367:
“Yyo tendría que plantearle al Presidente del Senado y él sabe la respuesta, si él discutió este asunto con los miembros y los jueces del Tribunal Supremo. Si él dialogó con ellos y llegó a algún tipo de acuerdo con los jueces asociados del Tribunal Supremo”. (Énfasis suplido). Véase Diario de Sesiones, Senado de Puerto Rico, Vol. LXI, Núm. 31, pág. 3658.

 Véase Y. Millán Rodríguez, Suprema advertencia a AGP 4, El Vocero de Puerto Rico (15 de mayo de 2013).

 Véase Werner Goldschmidt, La imparcialidad como principio básico del proceso (“partialidad” y “parcialidad”), discurso de incorporación como miembro de número del Instituto Español de Derecho Procesal, disponible en http:// www.academiadederecho.org/upload/biblio/contenidos/la_imparcialidad.pdf.

 Véase Bush v. Gore, 531 US 98, 123 (2000) (Stevens, J., Op. disidente).